[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION TO DISMISS MECHANIC'S LIENS
The parties have stipulated, inter alia, to the following facts:
Saint Francis Hospital and Medical Center (hereinafter "Saint Francis") is a Connecticut non-stock corporation with a principal place of business in Hartford, Connecticut.
Gilbane Building Company (hereinafter "Gilbane") is a Rhode Island corporation authorized to do business in the State of Connecticut.
Gilbane served as the construction manager for a certain construction project at and for Saint Francis (hereinafter the "Project").
Saint Francis is the owner of certain real property in the City of Hartford, County of Hartford and State of Connecticut recorded in the name of Saint Francis Hospital of Hartford in the Land Records of the City of Hartford in Volume 1258, Page 116, (hereinafter the "Project Site").
BT Contractors, Inc. (BT) is a Connecticut corporation which served as a subcontractor to Gilbane on the Project for certain masonry work.
Nobel Insurance Company (Nobel) is a Texas corporation CT Page 4704 authorized to conduct business in the State of Connecticut. It issued a surety bond to BT with respect to the masonry work at the Project.
BT commenced work at the Project on or about October 3, 1994.
Nobel arranged for the completion of work under BT's contract at the Project.
Pursuant to completion of work under BT's contract, Nobel opted to employ a subcontractor, Lombardo Bros., Inc. (Lombardo) to perform physical labor and provide materials at the project.
The sum claimed to be due by BT for services to the Project has not been paid to date.
The sum claimed to be due Nobel for services rendered to the Project has not been paid to date.
On or about August 13, 1996, BT caused an indifferent person to serve a written "Notice of Subcontractor's Lien" upon Saint Francis and Gilbane, which notice was dated August 13, 1996, stating that BT intended to claim a lien upon the Project Site described above at Paragraph 4. Said notice was given and the return was made to BT within 90 days after May 15, 1996, the date stated in the Notice of Lien as the last date upon which BT provided services to the Project.
On August 13, 1996, BT filed a Certificate of Mechanic's Lien, duly subscribed and sworn to under oath, with the Clerk of the City of Hartford, which Certificate of Mechanic's Lien was dated August 13, 1996, claiming a lien on the Project Site for the sum of $296,775.20.
On August 13, 1996 BT caused an indifferent person to serve a true and attested copy of the Certificate of Mechanic's Lien upon Saint Francis and Gilbane. Said service was made by BT within 90 days after May 15, 1996.
On August 14, 1996, Nobel caused an indifferent person to serve a written "Notice of Subcontractor's Lien" upon Saint Francis and Gilbane which notice was dated August 12, 1996, stating that it intended to claim a lien upon the Project Site. CT Page 4705
On August 14, 1996 Nobel filed a Certificate of Mechanic's Lien, duly subscribed and sworn to under oath with the Clerk of the City of Hartford, which Certificate of Mechanic's Lien was dated August 12, 1996 claiming a lien on the Project Site for the sum of $65,901.87.
On August 14, 1996 Nobel caused an indifferent person to serve a true and attested copy of the Certificate of Mechanic's Lien upon Saint Francis and Gilbane.
In addition the court finds the following facts:
In the bond given by Nobel to Gilbane on December 1, 1994 the language of paragraph (3) contains, inter alia, the statement "If [Nobel] arranges completion or remedies the default, that portion of the balance of the contract as may be required to complete the contract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the time and in the manner as said sums would have been payable to [BT] had there been no default under the contract".
In a letter from Gilbane's counsel dated December 12, 1995 the following language is found in the fifth paragraph:
 As the contract requires certain documentation in order to close out an account, once we have finalized all the details, I would appreciate receiving from you a letter confirming our arrangement whereby Gilbane will pay the contract balance as a final payment, subject to the retainage on which we anticipate reaching agreement, in exchange for Nobel's affirmation of its obligation to handle payment to Lombardo and any other subcontractor/supplier/union claims arising out of the BT contract.
These two statements make it clear that Gilbane expected Nobel, upon a default by BT, to hire and pay a sub-contractor such as Lombardo to complete the work and that Nobel would be paid "at the time and in the manner as said sums would have been payable to" BT. As a result Gilbane's bond contract and letter allow Nobel to act as BT would act. The court interprets that to include hiring Lombardo and filing a mechanic's lien for the job.
LAW
CT Page 4706
I. WAIVER
Article 4.3 of the subcontractor's contract with Gilbane provides:
 "The trade contractor [i.e. BT] agrees to be bound to and assume toward the construction manager [Gilbane] all of the obligations and responsibilities that the construction manager, by those documents assumes toward the owner. Contract documents are available, at reasonable times, at the office of the construction manager for examination by the trade contractor."
Defendants claim that as a result of that language there is some sort of "flow-over" waiver of mechanics lien rights because Gilbane never had to give a waiver to Saint Francis. First, although there is no evidence that St. Francis ever received from Gilbane a waiver on "such form of mechanic's lien waiver as the Owner . . . shall reasonably require" per contract Article 14.4, Gilbane did specifically waive its mechanic's lien rights in that article. This court has no evidence that St. Francis ever excused the waiver.
Second, if the so-called "flow-over" interpretation were accepted it would mean that BT would have to build the entire hospital, for that is Gilbane's obligation under the contract with St. Francis.
Third, the BT subcontract goes into exquisite detail about BT's obligations[1] and never mentions lien waivers. The court cannot find any waiver by BT.
II. LATE FILING
The last work done on the project by BT was not after on or about November 4, 1995. The last work performed to complete the BT obligations was done by Lombardo on May 16, 1996. The appropriate mechanic's liens and notices were filed and served on or before August 14, 1996. Thus, for the Lombardo's work the 90 day statutory period for the lien and notices ran from the day Lombardo ceased work on the job, May 16, 1996, to August 14, 1996. Connecticut General Statute § 49-34. There was no late filing by Lombardo. Lombardo sent an invoice for the last day it worked. CT Page 4707
That last work provided substantial completion of the bonded work.
III "SURETY LIEN"
Plaintiff questions the right of a surety, like Nobel, to file a mechanic's lien.
Under defendant's theory the Lombardo work and the BT work are both subject to Nobel's lien rights. Clearly, standing along the BT lien was filed late.
Nobel wrote to Gilbane on December 12, 1995 and stated, inter alia, ". . . confirming our arrangement whereby Gilbane will pay the contract balance as a final payment . . ., in exchange for Nobel's affirmation of its obligation to handle payment to Lombardo and any other subcontractor/supplier/union claims arising out of the BT contract". In response Gilbane wrote to Nobel on December 13, 1995 saying, inter alia, "your suggestion as to the handling of this matter appears reasonable," with two questions not here pertinent.
Even if Nobel's rights did not rise to the level of a right to file a mechanic's lien under the agreement about paying BT and Lombardo, it is, as a surety, entitled to be subrogated to BT's and Lombardo's rights.
 "In accordance with the rule that the subrogee, whether a surety or other party, is entitled to all the rights, securities, and remedies the creditor had against eh principal debtor, it is very generally held that such party, upon paying the debt, will be substituted in the place of the creditor to all the liens held by the latter to secure payment of the debt. and the creditor is bound to preserve them unimpaired."
73 Am.Jur.2d Subrogation § 119.
Application to discharge the lien is denied.
Norris L. O'Neill, J.